IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOSEPH M. O'DONNELL,<br><br>   Plaintiff,<br> v.<br><br>AMERESCO, INC.,<br><br>   Defendant. | Case No.: 3:23-cv-00085-AN<br><br><br>OPINION AND ORDER |

   Plaintiff Joseph M. O'Donnell filed this action against defendant Ameresco, Inc., alleging state law claims for (1) breach of the implied duty of good faith and fair dealing; (2) wrongful discharge via retaliation; and (3) age discrimination. On February 14, 2023, defendant moved to dismiss plaintiff's first and second claims under Federal Rule of Civil Procedure 12(b)(6). Oral argument was heard on September 12, 2023. For the reasons outlined below, defendant's motion is GRANTED.

## LEGAL STANDARD

   A motion to dismiss for failure to state a claim is appropriate when the allegations within a complaint do not "state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

   When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Allegations in a complaint "may not simply

recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). While the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Iqbal*, 556 U.S. at 678-79.

## BACKGROUND

Defendant is a Massachusetts corporation registered to conduct business in Oregon. Notice of Removal, Ex. A ("Compl."), ECF [1], ¶ 2. Plaintiff was employed by defendant from August 2013 to March 22, 2022. *Id.* ¶ 3. Between 2013 and 2018, plaintiff increased defendant's Oregon business bookings from approximately $4 million in 2013 to nearly $30 million in 2018. *Id.* Between 2019 and 2021, plaintiff was a Northwest Regional Sales Manager and managed a sales team. *Id.* ¶ 7.

While employed as a Sales Manager, plaintiff discovered that defendant had a geographically inequitable commissions policy where commissions for salespersons in the Northwest region were nearly fifty percent lower than those paid to salespersons in other regions. *Id.* ¶ 16. Upon this discovery, plaintiff brought the issue to the attention of his supervisors, Britta MacIntosh ("MacIntosh"), the West Coast Senior VP, and Ron Haxton ("Haxton"), the VP of the Northwest Region. *Id.* ¶ 17. Plaintiff alleges that, immediately following these discussions, both supervisors began to act hostile toward plaintiff in both public and private settings. *Id.*

In early March of 2022, defendant presented Northwest Region Account Executives, including plaintiff, with a Sales Commission Policy (the "Policy") that remedied the pay inequity. *Id.* ¶ 18. Plaintiff signed the Policy on March 2, 2022, but the Policy did not become effective until April 15, 2022. *Id.* ¶ 19.

In 2020, plaintiff and defendant entered into the Incentive Stock Option Agreement ("Stock Agreement") which entitled plaintiff to purchase 1,000 Ameresco shares each year at $22.53 per share from 2021 to 2025. *Id.* ¶¶ 8-9. Plaintiff purchased 1,000 shares in 2021 and 2022. *Id.*

In 2021, plaintiff transitioned back to defendant's sales force and led his team in bookings. *Id.* ¶ 10. In early 2022, plaintiff spearheaded the Willamette University Energy Efficiency Measures Project ("Willamette Project"). *Id.* ¶ 11. The Willamette Project would have been defendant's largest booking in Oregon and was expected to generate a $20 million contract. *Id.* ¶¶ 11-12. The project was slated to begin in the summer of 2022. *Id.* ¶ 12. Plaintiff alleges that, if the project had been completed as scheduled, he would have earned a commission of approximately $325,000 under the Policy. *Id.* ¶ 21.

On March 22, 2022, defendant terminated plaintiff's employment without reason, notice, or severance. *Id.* ¶ 4. Plaintiff alleges that, upon information and belief, Willamette University subsequently reduced the scope of the Willamette Project because plaintiff was terminated and replaced with an inexperienced representative. *Id.* ¶¶ 14-15.

Plaintiff also alleges that in the last year of his employment, Haxton and MacIntosh were "transparent about their desire to reduce the number of white males in their 50s on their sales team." *Id.* ¶ 26. At the time of plaintiff's termination, he was fifty-two years old. *Id.* ¶ 25.

Plaintiff alleges that defendant has numerous employee policies and procedures, including a policy requiring that employees be provided with a Performance Improvement Plan ("PIP") prior to termination for poor performance. *Id.* ¶ 30. Plaintiff did not receive a PIP or any indication that his performance was inadequate prior to his termination. *Id.* ¶ 31. However, a post-termination letter dated July 28, 2022, from defendant, indicated that plaintiff was terminated for poor performance. *Id.* ¶ 32.

Plaintiff filed the present action in Multnomah County Circuit Court on December 15, 2022. Defendant removed the case to this Court on January 18, 2023, and filed the present motion to dismiss on February 14, 2023, seeking dismissal of plaintiff's first and second claims for relief.

## DISCUSSION

A.     **Breach of Implied Duty of Good Faith and Fair Dealing**

Plaintiff's claim for breach of implied duty of good faith and fair dealing derives from the Policy. Plaintiff alleges that by agreeing to the Policy, both plaintiff and defendant had an implied duty of

good faith and fair dealing. Plaintiff alleges that defendant breached its implied duty by terminating plaintiff to avoid paying him his earned commissions under the Policy.

Under Oregon law, "the law imposes a duty of good faith and fair dealing in the performance of every contract." *Sheets v. Knight*, 308 Or. 220, 233, 779 P.2d 1000 (1989), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995). However, this duty is implicated only if the parties "have not agreed to an express term that governs that issue[.]" *Or. Univ. Sys. v. Or. Pub. Emps. Union, Loc. 503*, 185 Or. App. 506, 511, 60 P.3d 567 (2002). That is, the duty "cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract." *Zygar v. Johnson*, 169 Or. App. 638, 645, 10 P.3d 324 (2000), *rev. den.*, 331 Or. 584, 19 P.3d 356 (2001).

In the context of at-will employment contracts, there is no duty of good faith and fair dealing "insofar as the right to discharge at will is concerned." *Sheets*, 308 Or. at 233. Thus, while the duty of good faith and fair dealing applies to the "ongoing performance of at-will employment agreements," it does not apply to an employer's, or employee's, decision to terminate employment absent an express agreement to restrict the right to terminate at will. *Elliot v. Tektronix, Inc.*, 102 Or. App. 388, 396, 796 P.2d 361 (1990).

Defendant argues that, because plaintiff does not allege that he was employed for a specific duration or that he could be terminated only for cause, he must be presumed to be an at will employee. Thus, defendant argues that it was free to terminate plaintiff at any time and for any reason. Further, defendant argues that an express term governs the issue of whether plaintiff was entitled to a commission on the Willamette Project because the Policy states that a commission is "earned" once "the Company [has] receive[d] from the customer a fully-executed 'certificate of substantial completion' or equivalent document and payment of any outstanding retention for such project." Compl., Ex. A, at 3. Because Willamette University never issued a certificate of substantial completion, defendant argues that plaintiff's claim would contradict an express term in the Policy.

Plaintiff argues, however, that the Policy is not an at-will contract and that the details of the Policy provisions are irrelevant. That is, plaintiff argues that the crux of his claim is not that defendant breached specific provisions of the Policy, but rather that defendant terminated him for the sole purpose of destroying his right to a large commission payable under the Policy's terms.

Policy agreements that are connected to at-will employment are still employment agreements under Oregon law. *See Elliott*, 102 Or. App. at 395-96 (addressing implied duty of good faith and fair dealing claim related to service attendance policy). Plaintiff does not contend that he was not an at-will employee. Thus, the question is whether the Policy restricted defendant's right to terminate plaintiff at will.

Though plaintiff argues that the Policy is not an at-will employment contract, this does not change the fact that the Policy was an agreement related to plaintiff's at-will employment. Nothing in the Policy rebuts the presumption that plaintiff was an at-will employee, or that the Policy was intended to restrict defendant's right to terminate plaintiff at will.[1] Thus, plaintiff's basis for his breach of the implied duty of good faith and fair dealing claim is, essentially, that defendant took "an unpleasantly motivated act that is expressly permitted by" his employment agreement. *Zygar*, 169 Or. App. at 645; *see Sheets*, 308 Or. at 233 ("The foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause."). This basis is insufficient to state a claim for breach of the implied duty of good faith and fair dealing.

**B.    Wrongful Discharge**

Plaintiff alleges that he was wrongfully discharged in retaliation for exposing defendant's inequitable commission policies. Plaintiff further alleges that, under both Oregon and federal law, there is a recognized public policy on pay equity that protects employees from retaliation for discussing compensation.

---

[1] Though plaintiff contends that interpreting the Policy at the motion to dismiss stage is inappropriate, the Court may consider documents properly submitted as part of the complaint at the motion to dismiss stage, and the Policy was submitted as an exhibit with the complaint. *Lee v. Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Under Oregon law, at-will employees may bring wrongful discharge claims in only two circumstances: (1) the employee is discharged for exercising a job-related right that reflects an important public policy, or (2) the employee is discharged for fulfilling a public duty or fulfilling a societal obligation. *Babick v. Or. Arena Corp.*, 333 Or. 401, 407, 40 P.3d 1059 (2002). As an initial matter, it is not entirely clear from the complaint which exception plaintiff is relying on. Based on plaintiff's arguments, the Court presumes that he is alleging a wrongful discharge claim under the second theory: that he was terminated for fulfilling a public duty.

Under the public duty exception, plaintiff must identify a "duty to perform a specific act." *Id.* at 409. In identifying a such a duty, courts "cannot simply create a relevant public duty to suit the occasion, but must actually 'find' one in the state's constitutional and statutory provisions and case law." *Lamson v. Crater Lake Motors, Inc.*, 346 Or. 628, 637, 216 P.3d 852 (2009) (citing *Babick*, 333 Or. at 401). Such a duty may be found when a statute, case, rule, or constitutional provision "specifically encourage[s] or require[s] a particular action," or when such sources "otherwise demonstrate[e] that such action enjoy[s] high social value." *Love v. Polk Cnty. Fire Dist.*, 209 Or. App. 474, 486, 149 P.3d 199 (2006) (alterations in original) (quoting *Eusterman v. Nw. Permanente, P.C.*, 204 Or. App. 224, 230, 129 P.3d 213 (2006)).

Actions with "high social value" are narrowly defined. *Id.* That is, such conduct must, at the very least, be "by statute or rule, [ ] explicitly described as being of high social value[,]" and be "similar to [conduct] giving rise to legally compelled obligations to act in other, analogous contexts." *Id.* at 487. Statutes articulating a general public policy that could be "thwarted by the discharge at issue," standing alone, are usually insufficient to support a wrongful discharge claim. *Lamson*, 346 Or. at 637-38. That is, the relevant public policy must "speak directly to [the] acts" allegedly underlying the wrongful discharge. *Id.* Thus, Oregon courts have found that a public duty or societal obligation exists for serving on a jury, *Nees v. Hocks*, 272 Or. 210, 219, 536 P.2d 512 (1975), for refusing to sign false and potentially defamatory statements about a co-worker, *Delaney v. Taco Time Int'l, Inc.*, 297 Or. 10, 17, 681 P.2d 114 (1984), and for reporting patient abuse at a nursing home, *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or. App. 107, 110, 684 P.2d 21 (1984).

As highlighted by defendant, plaintiff's complaint fails to identify specific constitutional or statutory provisions establishing a public duty related to plaintiff's conduct. Plaintiff argues that, at this stage of the case, such specificity is not required because *Lamson* addressed the plaintiff's wrongful discharge claim after the defendant obtained a directed verdict. However, in *Babick v. Oregon Arena Corporation*, the Oregon Supreme Court held that the plaintiffs' wrongful discharge claim failed to state a claim for relief because there was "no support in the statutes" for "the kinds of acts that allegedly triggered plaintiffs' discharge." 333 Or. at 410. Similarly, in *Campbell v. Ford Industries, Inc.*, the Oregon Supreme Court held that the plaintiff failed to allege facts sufficient to support a wrongful discharge claim after the trial court dismissed the plaintiff's second amended complaint. 274 Or. 243, 245-252, 546 P.2d 141 (1976). Thus, the issue raised by defendant is not *per se* inappropriate at the motion to dismiss stage.

Defendant also highlights that plaintiff's allegations assert that he was wrongfully terminated for identifying pay inequities between employees in different geographic regions. Yet, defendant argues that plaintiff has not connected any relevant source of Oregon or federal law to a public policy aimed at pay inequities between Oregon employees and employees in other states or regions. However, plaintiff argues that Oregon Revised Statute ("ORS") § 659A.355(1)(a) evinces a public policy of protecting employees from retaliation for inquiring about compensation. That statute makes it an unlawful employment practice for an employer to retaliate against an employee because the employee has "[i]nquired about, discussed or disclosed in any manner the wages of the employee or of another employee[.]" Or. Rev. Stat. § 659A.355(1)(a). Further, plaintiff references ORS § 659A.003, which describes the legislative purpose of ORS § 659A. Under these statutory provisions, plaintiff argues that inquiring about one's compensation is fulfilling a public duty and therefore his wrongful discharge claim is adequately pled.

Two recent Oregon Supreme Court cases shed some light on the issue. In *Babick*, the plaintiffs, who worked as security guards for the defendant at a concert arena, alleged that they were wrongfully discharged for arresting, or attempting to arrest, audience members engaged in assaultive behavior and illegal drug and alcohol possession. 333 Or. at 403-04. The trial court dismissed the plaintiffs'

7

wrongful discharge claim, and though the Oregon Court of Appeals reversed, finding that the plaintiffs had exercised a public duty, the Oregon Supreme Court disagreed and reinstated the trial court's decision. *Id.* at 410.

The Oregon Court of Appeals identified three sources of law that supported the existence of a public duty. First, it relied on ORS §§ 131-170, finding that the statutes reflected a public policy against crime, and favored community safety and order. *Id.* at 409. However, the Oregon Supreme Court found that these statutes were "far too general to support plaintiffs' 'public duty' theory" because the statutes were silent on the plaintiffs' specific acts. *Id.* Second the appeals court relied on ORS §§ 133.220(3) and 133.225(2), which entitled private citizens to arrest lawbreakers. *Id.* Again, the Oregon Supreme Court found these insufficient, emphasizing that the statutes were "neutral on the essential issue, which is whether the law encourages law enforcement action by private individuals or security personnel." *Id.* Third, the appeals court relied on ORS § 181.870 *et seq.*, a statutory scheme regulating the licensing and training of private security personnel. *Id.* at 409-10. Again, the Oregon Supreme Court found that the statutes "suffer[ed] from a similar lack of focus" because they showed public concern "abut the manner in which private law enforcement is carried out," but did "not suggest that the activities of private security personnel enjoy any higher social value than the activities of employees in other professions to which the at-will rule applies." *Id.* at 410. Additionally, the court highlighted that neither statute "impose[d] an affirmative duty on private security personnel to arrest lawbreakers." *Id.*

In *Lamson v. Crater Lake Motors, Inc.*, the plaintiff, a sales manager for the defendant car dealership, alleged that he was wrongfully terminated for complaining to management about unethical and/or illegal tactics used by an outside sales firm, and for refusing to participate in the firm's sales event. 346 Or. at 630-33. After a trial, the trial court denied the defendant's motion for a directed verdict on plaintiff's wrongful discharge claim and the jury returned a verdict in plaintiff's favor. *Id.* at 634. However, on review, the Oregon Supreme Court reversed the trial court's judgment. *Id.* at 641.

Before the Oregon Supreme Court, the plaintiff alleged that he had been performing a public duty or societal obligation by refusing to participate in the event and by complaining to management

8

about the unethical sales tactics. *Id.* at 638. He relied primarily on Oregon's Unlawful Trade Practices Act and accompanying regulations, arguing that they reflected "a strong public interest in preventing the kinds of sales tactics that purportedly were used during the [firm's] sales event." *Id.* The court agreed that the laws "reflect a public policy that generally prohibits and seeks to prevent the kinds of deceptive conduct that plaintiff reasonably believes had occurred at the first [firm's] sales event." *Id.* However, the court disagreed that such a policy related to the plaintiff's specific theories of wrongful discharge.

First, the court rejected the plaintiff's contention that he had been wrongfully discharged for refusing to engage in unlawful and unethical practices after finding that the plaintiff's testimony affirmed that he had never been asked to do anything unlawful or unethical. *Id.* at 638-39. Second, the court addressed the plaintiff's contention that he was wrongfully discharged for complaining to management about the firm's sales tactics. *Id.* After analyzing the context of the plaintiff's claim, the court highlighted that the plaintiff had complained about unethical conduct from an entity that his employer contracted with, rather than unethical conduct by his own employer. *Id.* at 640. Though the court acknowledged that, in some contexts, an employee may be protected when reporting unlawful actions by others to his employer, the present circumstances did not meet those criteria. *Id.* (citing Or. Rev. Stat. § 659A.230(1), which prohibits employer discrimination against employees for reporting criminal activity or cooperating with criminal investigations). Thus, the court held that this contention did not support a wrongful discharge claim because the plaintiff had not identified a public duty or social obligation to prevent entities, other than his employer, from engaging in unethical conduct. *Id.* at 641.

Turning back to the case at hand, put simply, plaintiff's argument seems to be that in discussing compensation inequity with his supervisors, he engaged in protected activity under ORS § 659A.355(1)(a). Plaintiff does not allege that this statute, or ORS § 659A.003, imposes an obligation on employees to make wage inquiries. Thus, the Court understands his argument to be that because wage inquiries are protected activity, they are afforded high social value and conducting such an inquiry is akin to exercising a public duty.

9

The Court agrees that ORS § 659A.355(1)(a) likely supports a general policy in favor of pay equity and encourages wage inquiries, discussions, and disclosure. However, even assuming that plaintiff's conduct constitutes a wage inquiry or discussion under the statute, the Court is not convinced that this general policy is applicable to plaintiff's specific conduct. As evidenced by the very statute that plaintiff cites, the purpose of ORS § 659A.355 is remedying employment discrimination. Or. Rev. Stat. § 659A.003(2) ("[T]he Legislative Assembly intends by this chapter to provide: . . . . An adequate remedy for persons aggrieved by certain acts of unlawful discrimination . . . in employment). That is, the purpose of ORS § 659A.355 is preventing discrimination in the form of pay inequity by protecting employees who discuss their wages. ORS § 659A.003(2) further outlines the categories of discrimination that it seeks to remedy: "race, color, religion, sex, sexual orientation, gender identity, national origin, marital status, disability or familial status, or . . . age."

Plaintiff's allegations make clear that the pay inequity that he raised related to a discrepancy in pay between sales managers in different geographical regions. ORS § 659A.003 is silent on whether pay inequities between employees in different geographic locations is discriminatory. Plaintiff has not provided any evidence that Oregon or federal law attributes high social value to remedying pay inequities between differently geographically-situated employees. Indeed, defendant has provided evidence to the contrary. ORS § 652.220(1)(a) explicitly prohibits employers from using wages or other compensation to discriminate between employees on the basis of a protected class when their work is of a comparable character. Protected classes are defined as "race, color, religion, sex, sexual orientation, gender identity, national origin, marital status, veteran status, disability, or age." Or. Rev. Stat. § 652.210(1)(6). Further, Oregon Administrative Rule 839-008-0010(2) explicitly states that "[e]valuations of work of comparable character need only consider comparisons of Oregon employees." These sources of law indicate that Oregon law does not place a high social value on remedying pay inequities between employees in different geographic regions.

Put simply, though plaintiff has identified a general policy that attributes high value to remedying pay inequity derived from discrimination, he has not identified how that general policy "speak[s]

10

directly to [the] acts" that allegedly led to his discharge. *Lamson*, 346 Or. at 637-38. Thus, he has not adequately pled the existence of a public duty or social obligation that he was discharged for fulfilling.

## CONCLUSION

Accordingly, defendant's Motion to Dismiss, ECF [7], is GRANTED. Plaintiff's first claim for relief, breach of the implied duty of good faith and fair dealing, and plaintiff's second claim for relief, wrongful discharge, are DISMISSED without prejudice. If plaintiff believes he can remedy the deficiencies described, he may file a First Amended Complaint within fourteen days of this Opinion and Order.

IT IS SO ORDERED.

DATED this 9th day of February, 2024.

Adrienne Nelson
United States District Judge